```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/19/12
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

GBC FUNDING, LLC,

                Plaintiff,

    - against -

SUDEEPTO DATTA,

               Defendant.

---------------------------------------------------------------

ECF CASE

10 Civ. 3319 (PGG)

**ORDER**

PAUL G. GARDEPHE, U.S.D.J.:

    This breach of contract action arises out of an Amended and Restated Guaranty that Plaintiff GBC Funding, LLC ("GBC") and pro se Defendant Sudeepto Datta entered into on December 14, 2007. (Cmplt. ¶ 1) GBC alleges that it extended approximately $60 million in loans to Global Brand Marketing, Inc. ("GBM") under a Loan and Security Agreement, and that GBM has defaulted on that agreement and owes GBC $9 million. (Cmplt. ¶ 10; Pltf. R. 56.1 Stmt. ¶ 20) Under the Guaranty, Datta unconditionally guaranteed the full and prompt payment of all of GBM's liabilities and obligations to GBC up to $3 million. (Cmplt. ¶ 11) GBC contends that, despite its demands, Datta has not made the required payment under the Guaranty. (Cmplt. ¶¶ 12-13)

    GBC now moves for summary judgment. Datta has not filed any opposition to the motion. For the reasons stated below, GBC's motion for summary judgment will be granted.

## BACKGROUND

    GBC, an asset-based lender, is a limited liability company with its principal place of business in New York, New York.[1] (Pltf. R. 56.1 Stmt. ¶ 7; Cmplt. ¶ 6) It is a wholly owned

---

[1] To the extent that this Court relies on facts drawn from Plaintiff's Rule 56.1 statement, it does so because Defendant has not disputed those facts. See Giannullo v. City of New York, 322 F.3d

subsidiary of Greystone Business Credit II, LLC ("Greystone"). (Pltf. R. 56.1 Stmt. ¶ 8) Sudeepto Datta, the founder and former president of GBM, resides in Santa Barbara, California. (Pltf. R. 56.1 Stmt. ¶¶ 10, 12)

On December 4, 2006, Greystone and GBM entered into a Loan and Security Agreement (the "GBM Loan and Security Agreement"), which is governed by New York law. (Pltf. R. 56.1 Stmt. ¶¶ 13-14; O'Connell Decl., Exh. 1) Under the terms of the GBM Loan and Security Agreement, Greystone extended a $25 million revolving loan to GBM. (Pltf. R. 56.1 Stmt. ¶ 15; O'Connell Decl., Exh. 1, Sched. A, § 1(a)) On March 7, 2007, GBC and Greystone entered into a Purchase and Sale Agreement, pursuant to which GBC acquired the GBM Loan and Security Agreement from Greystone, and became successor to the assets and liabilities accruing therefrom. (Pltf. R. 56.1 Stmt. ¶¶ 16-17; O'Connell Decl., Exh. 2)

In the summer of 2007, GBM committed a default under the GBM Loan and Security Agreement. (Pltf. R. 56.1 Stmt. ¶¶ 18, 20) GBC agreed to continue providing financing to GBM, but "required that [Datta] guaranty all obligations of [GBM] to [GBC]." (O'Connell Decl., Exh.4 at 1). Accordingly, on December 14, 2007, GBC and Datta executed an Amended and Restated Guaranty ("the Guaranty"), also governed by New York law. (Pltf. R. 56.1 Stmt. ¶¶ 21-22; O'Connell Decl., Exh. 4) GBC did not waive any of its rights under the GBM Loan and Security Agreement, however, including those rights flowing from GBM's default. (Pltf. R. 56.1 Stmt. ¶ 19; O'Connell Decl., O'Connell Decl., ¶ 7)

---

139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." (citations omitted)). Defendant did not submit a Rule 56.1 Statement to this Court. "A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible. In the typical case, failure to respond results in a grant of summary judgment once the court assures itself that Rule 56's other requirements have been met." T.Y. v. New York City Dept. of Educ., 584 F.3d 412, 418 (2d Cir. 2009).

Under the terms of the Guaranty, Datta guaranteed "the full and prompt payment . . . of the indebtedness, liabilities and obligations of every kind and nature of [GBM] to [GBC] . . . arising under the [GBM] Loan [and Security] Agreement." (Pltf. R. 56.1 Stmt. ¶ 23, O'Connell Decl., Exh. 4 at 1) Datta's liability under the Guaranty is limited to $3,000,000, plus interest and expenses incurred by GBC in enforcing the Guaranty. (Pltf. R. 56.1 Stmt. ¶ 31, O'Connell Decl., Exh. 4 at 2) Datta's obligations under the Guaranty are unconditional, regardless of any failure by GBC to "require strict performance by [GBM] or [Datta] of any of the provisions, warranties, terms and conditions. . . ." (O'Connell Decl., Exh. 4 at 6)

Datta's liability under the Guaranty is subject to certain offsets. Calculation of these offsets requires analysis of certain provisions in a separate loan and security agreement that was entered into between non-party Titan Apparel, Inc. ("Titan") and GBC (the "Titan Loan Agreement") on the same day that Datta signed the Guaranty. (O'Connell Decl., Ex. 8) GBC is also barred from enforcing any of its rights or remedies under the Guaranty "until ninety (90) days after the first day of the month following the month in which the Net Sales Participation [as defined in the Titan Loan Agreement] for any trailing three-month period has been less than an amount equal to the average of the Target Net Sales participation [set forth in the Guaranty] for the three applicable months."[2] (O'Connell Decl., Exh. 4 at 6) In addition to this ninety day waiting period, GBC is required to provide Datta "with ten (10) days prior written notice" before enforcing any of its rights or remedies under the Guaranty. (O'Connell Decl., Exh. 4 at 7)

---

[2] The Guaranty sets Target Net Sales Participation amounts for each month. The required monthly payments from Titan range from $50,000 to $125,000, depending on the month. From December 14, 2007, when Datta signed the Guaranty, Titan never satisfied the Target Net Sales Participation amounts set forth in the Guaranty. (Pltf. R. 56.1 Stmt. ¶ 29; O'Connell Decl., ¶ 12, Exh. 4 at 6)

On November 19, 2009, GBC provided written notice to Datta of GBM's default under the GBM Loan and Security Agreement, and demanded that he immediately remit the payment owed under the Guaranty. (Pltf. R. 56.1 Stmt. ¶ 27, O'Connell Decl., Exh. 5) GBC alleges that GBM has not made $9 million in required loan payments due GBC. (Id. ¶ 20) On April 6, 2010, GBC sent Datta a second notice of GBM's default status under the GBM Loan and Security Agreement, and demanded again that Datta immediately remit payment owed under the Guaranty. (Pltf. R. 56.1 Stmt. ¶ 28, O'Connell Decl., Exh. 6) Datta did not respond to either demand letter, and he has not made any payment to GBC under the Guaranty. (Pltf. R. 56.1 Stmt. ¶ 43)

On April 20, 2010, GBC filed this breach of contract action. (Pltf. R. 56.1 Stmt. ¶ 1) On February 7, 2011, Datta's then-counsel, Leader & Berkon, moved to withdraw as counsel, and the Court granted that motion on February 14, 2011. (Pltf. R. 56.1 Stmt. ¶ 5) On March 18, 2011, GBC filed the instant motion for summary judgment. (Dkt. No. 20) In compliance with Local Civil Rule 56.2, GBC included with its motion the required "Notice to Pro Se Litigant Opposing Motion for Summary Judgment." To date, Datta has not responded to the motion.

GBC alleges that "[i]n excess of $ 9 million of loan proceeds [GBC] extended to GBM[] remain unpaid." (Pltf. R. 56.1. Stmt. ¶ 20) As noted above, the Guaranty caps Datta's liability for unpaid loan amounts at $3 million. (Id. ¶ 31; O'Connell Decl., Exh. 4 at 2) GBC alleges that Datta currently owes GBC $2,754,726.94 – a sum that reflects offsets under the Guaranty for VAT payment refunds, Net Sales Participation payments, and Ineligible Receivable Payments. (Id. ¶¶ 35-36, 38-40)

# DISCUSSION

## I. LEGAL STANDARD

Summary judgment is warranted when the moving party shows that "there is no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008).

In deciding a summary judgment motion, the Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Cifra v. General Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001). The non-movant "cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts.'" Woodman v. WWOR–TV, Inc., 411 F.3d 69, 75 (2d Cir.2005) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). Instead, a non-moving party must "'offer some hard evidence showing that its version of the events is not wholly fanciful.'" Golden Pac. Bancorp v. FDIC, 375 F.3d 196, 200 (2d Cir.2004) (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir.1998)).

Summary judgment is often appropriate in an action for breach of a guaranty. See, e.g., Phoenixcor, Inc. v. Pnini, No. 03 Civ. 7590(LTS)(HBP), 2005 WL 2063829, at *2-3 (S.D.N.Y. Aug. 26, 2005) (granting summary judgment where defendant defaulted on individual guaranty by failing to pay debt pursuant to a loan and guaranty agreement); EMI Music Marketing v. Avatar Records, Inc., 317 F. Supp. 2d 412, 419 (S.D.N.Y. 2004) (granting summary judgment on claims against company executive for breach of contract and personal

guaranty, and noting that "New York State courts consistently enforce unconditional guarantees").

## II. GBC HAS DEMONSTRATED THAT DATTA BREACHED THE GUARANTY

### A. Applicable Law

"In order to recover from a defendant for breach of contract, a plaintiff must prove, by a preponderance of the evidence, (1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." Diesel Props. S.R.L. v. Greystone Business Credit II LLC, 631 F.3d 42, 52 (2d Cir. 2011) (citing Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York, 375 F.3d 168, 177 (2d Cir. 2004); Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996)).

In cases involving a breach of a guaranty, "a plaintiff establishes its prima facie entitlement to summary judgment by establishing the execution of the agreement[] at issue and nonpayment thereunder." Valley Nat. Bank v. Greenwich Ins. Co., 254 F.Supp.2d 448, 453 (S.D.N.Y. 2003) (citing Orix Credit Alliance, Inc. v. Bell Realty, Inc., No. 93 Civ. 4949, 1995 WL 505891, at *3 (S.D.N.Y. Aug. 23, 1995)).

"'For a plaintiff to establish a prima facie case that it is entitled to recover on a guarantee under New York law, it must show: (1) that it is owed a debt from a third party; (2) that the defendant made a guarantee of payment of the debt; and (3) that the debt has not been paid by either the third party or the defendant.'" Chemical Bank v. Haseotes, 13 F.3d 569, 573 (2d Cir. 1994); Dolphin Direct Equity Partners, LP v. Interactive Motorsports and Entertainment Corp., No. 08 Civ. 1558(RMB)(THK), 2009 WL 577916, at *4 (S.D.N.Y. Mar. 2, 2009); City of New York v. Clarose Cinema Corp., 256 A.D.2d 69 (1st Dep't 1998).

B.   **Analysis**

GBC has demonstrated that GBM owes GBC more than $9 million. (Pltf. R. 56.1 Stmt. ¶ 20) James O'Connell, a Vice President of GBC, has submitted a declaration stating that over "$9 million of loan proceeds extended to GBM remain unpaid," and GBC has also introduced ledgers tracking the loans made to GBM. (O'Connell Decl., ¶ 8, Exh. 3) The ledgers show that more than $9 million in loan balances remain outstanding as of December 2, 2010.[3]

GBC has also established that Datta, in entering into the Guaranty, personally guaranteed "the indebtedness, liabilities and obligations of every kind and nature of [GBM] to [GBC]." (Pltf. R. 56.1 Stmt. ¶ 13; O'Connell Decl., Exh. 4 at 1) Indeed, Datta admits that he executed the Guaranty. (Wilkinson Decl., Exh. 4 (Def. Resp. to Pltf.'s Request for Admission)) ("[Datta] admits that he executed the Guaranty on or about December 14, 2007").

Finally, GBC has established that GBM has not made required payments under the GBM Loan and Security Agreement, that more than $9 million is outstanding, that demand has been made on Datta to satisfy his obligations under the Guaranty, and that Datta has made no payment to GBC under the Guaranty. (Pltf. R. 56.1 Stmt. ¶¶ 20, 27-28, 43; O'Connell Decl.,

---

[3] The GBM Loan Ledger Report reflects two loans to GBM. One loan has an outstanding balance of $6,267,508.47; the other has an outstanding balance of $2,120,882.67. (O'Connell Decl., Exh. 3 at 1, 16) The ledger also tracks interest due, and indicates that $1,366,869.18 in interest remains outstanding. (O'Connell Decl., Exh. 3 at 29)

As noted earlier, GBM defaulted under the GBM Loan and Security Agreement in the summer of 2007, and that default was never waived by GBC. (Pltf. R. 56.1 Stmt. ¶¶ 18-19, O'Connell Decl., ¶ 7) Under the GBM Loan and Security Agreement, in the event of default, GBC is permitted to "accelerate and declare all or any part of the Obligations to be immediately due." (O'Connell Decl., Exh. 1 at 23) Failure by GBC to exercise this right at the time of default "did not operate as a waiver thereof . . . [as] all rights and remedies . . . continue in full force and effect until all of the Obligations have been fully paid and performed." (O'Connell Decl., Exh. 1 at 25)

¶ 21) Accordingly, GBC has demonstrated that it is entitled to recover on the Guaranty, and it will be granted summary judgment on its breach of contract claim.

### III.   DAMAGES

"Summary judgment may be granted on damages where there is no fact dispute as to the amount of damages." GCCFC 2006-GG7 Westheimer Mall, LLC v. Okun, No. 07 Civ. 10394(NRB), 2008 WL 3891257, at *3 (S.D.N.Y. Aug. 21, 2008) (citing In re Livenet, Inc. Noteholders Securities Lit., 355 F.Supp.2d 722, 738 (S.D.N.Y. 2005) ("Because the Court finds no genuine issue of material fact in dispute with respect to class members' damages, the Court concludes that plaintiffs are entitled to summary judgment on the issue of damages as well")).

Under the Guaranty, Datta's maximum liability – for GBM's breach of its loan obligations – is $3 million plus interest after demand for payment under the Guaranty is made. Datta is also liable for court costs and attorneys' fees GBC incurs "in endeavoring to collect [on the Guaranty]":

> [T]he maximum liability of [Datta] shall not exceed the sum of (i) Three Million Dollars ($3,000,000) of Borrower's Obligations, (ii) all costs and expenses (including without limitation, all court costs and reasonable attorney's and paralegals' fees and expenses) paid or incurred by [GBC] in endeavoring to collect all or any part of such indebtedness from [Datta] and (iii) interest accruing on the amounts described in the foregoing clauses (i) and (ii) after demand for payment under this Guaranty is made by [GBC]. . . .

(O'Connell Decl., Exh. 4 at 2)

As noted above, under the Guaranty, Datta's liability is subject to the following offsets: "(A) all refunds of Value Added Tax in respect of period prior to the date hereof [i.e., prior to December 14, 2007] received by Titan Apparel, Inc. ("Titan") (the "VAT Payments") and indefeasibly received by [GBC]. . . , (B) 50% of the first $1,000,000 of VAT Payments indefeasibly received by [GBC] . . . , (C) all payments by Titan to [GBC] of Net Sales Participation (as defined in the Titan Loan Agreement) . . . , [and] (D) 50% of all proceeds

received by Titan from accounts receivable of [GBM] purchased by Titan on the date hereof that are deemed ineligible, as of the date hereof, for borrowing base purposes under the Titan Loan Agreement (the 'Ineligible Receivable Payments') so long as such proceeds are indefeasibly received by [GBC] as prepayments of the obligations owing to [GBC] by Titan. . . ." (O'Connell Decl., Exh. 4 at 2-3)

GBC asserts that Datta's current liability – before application of interest, court costs and attorneys' fees – is $2,754,726.94. That amount is calculated as follows:

(1) Datta's maximum liability under the Guaranty for GBM's breach of its loan obligations is $3 million. (Pltf. R. 56.1 Stmt. ¶ 33; O'Connell Decl., ¶ 16, Exh. 4 at 2)

(2) 50% of VAT Payments received directly by GBC must be credited to the Guaranty Balance. (O'Connell Decl., Exh. 4 at 2-3) GBC received $174,765.14 in VAT Payments on April 4, 2008. (Pltf. R. 56.1 Stmt. ¶ 35; O'Connell Decl., ¶ 17, Exh. 9) Fifty percent of this VAT Payment is credited against the Guaranty Balance, reducing Datta's maximum liability to $2,912,617.43.

(3) Any Net Sales Participation payments made by Titan to GBC must also be credited against the Guaranty Balance. (Pltf. R. 56.1 Stmt. ¶ 37; O'Connell Decl., Exh. 4 at 3) Titan made Net Sales Participation payments to GBC in the amounts of $20,080.73, $21,610.60, $39,858.25, and $33,194.65. (Pltf. R. 56.1 Stmt. ¶¶ 37-38; O'Connell Decl., ¶ 18, Exhs. 10-13) Datta's liability under the Guaranty is reduced to $2,797,873.20 after applying these credits.

(4) The Guaranty Balance is reduced by 50% of any Ineligible Receivable Payments made to GBC. GBC received $86,292.54 in Ineligible Receivable Payments. (Pltf. R. 56.1 Stmt. ¶ 40; O'Connell Decl., ¶ 19, Exhs. 10-12) Fifty percent of these payments are credited to the Guaranty Balance, reducing Datta's liability to $2,754,726.94.

New York law provides that "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract." C.P.L.R. § 5001. Under the Guaranty, "[a]ll sums becoming due under this Guaranty shall bear interest from the due date thereof until paid at the highest rate charged with respect to any of Borrower's Obligations under the [GBM Loan and Security Agreement]." (O'Connell Decl., Exh. 4 at 2) Pursuant to Section 2.1 of the GBM

9

Loan and Security Agreement, all revolving loans bear an interest rate of 3% per annum in excess of the prime rate,[4] and an additional 2% in the case of default.[5] The prime rate at the time of demand was 3.25%. (Pltf. R. 56.1 Stmt. ¶ 42; O'Connell Decl. ¶ 23) Accordingly, the applicable interest rate is 8.25% (3.25% prime rate, plus 3% in excess of the prime rate, plus 2% due to default).

GBC requests that this Court supplement the contractual interest rate of 8.25% with a pre-judgment interest rate of 9% – the statutory pre-judgment interest rate under C.P.L.R. § 5004. (Pltf. Br. at 11) Parties to a contract, however, "may . . . agree to a different pre-judgment interest rate, and if they do, the contract rate, rather than the C.P.L.R. rate, will apply." In re Best Payphones, Inc., No. 01-15472(SMB), 2003 WL 1089525, at *5 (S.D.N.Y. Mar. 10, 2003) (citations omitted). Furthermore, in New York, it is well-settled that a "written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569 (2002). Here, the parties agreed that "[a]ll sums becoming due under this Guaranty shall bear interest from the due date thereof until paid at the highest rate charged with respect to any of Borrower's Obligations under the [GBM Loan and Security Agreement]." That is, once GBC's loan to GBM came due (which GBC contends is November 19, 2009, the date it initially demanded payment), Datta's obligation to pay under the Guaranty is triggered, with interest accruing at a rate defined by the

---

[4] "Interest Rates on Revolving Loans . . . [is equal to] 3% per annum in excess of the Prime Rate." (O'Connell Decl., Exh. 1, Sched. A, § 2)

[5] "All Revolving Loans shall bear interest at the Interest Rates set forth in Section 2 of Schedule A . . . provided, that after the occurrence of and during the continuation of an Event of Default, all Revolving Loans and other monetary Obligations shall, at Lender's option, bear interest at a rate per annum equal to two percent (2%) in excess of the rate otherwise applicable to Revolving Loans . . . until paid in full. . . ." (O'Connell Decl., Exh. 1 at 3-4)

GBM Loan and Security Agreement. (Pltf. R. 56.1 Stmt. ¶ 42, O'Connell Decl., Exh. 4 at 1-2) Accordingly, this Court finds the appropriate interest rate is 8.25 percent.

Finally, Datta is responsible for court costs and attorneys' fees incurred by GBC in attempting to collect on the Guaranty. (O'Connell Decl., Exh. 4 at 2)

## CONCLUSION

For the reasons stated above, GBC's motion for summary judgment is GRANTED. The Clerk of the Court is directed to terminate the motion (Dkt. No. 20).

GBC will make any application for court costs and attorneys' fees by March 26, 2012. Any such submission will be supported by an affidavit justifying the fees and expenses sought.

GBC will also submit a proposed judgment by March 26, 2012. GBC's submission will be supported by an affidavit setting forth its calculations concerning an appropriate interest award.

The Clerk of the Court is directed to send a copy of this Order via certified mail to Defendant at 361 Ortega Ridge Road, Santa Barbara, CA 93108.

Dated: New York, New York
       March 19, 2012                      SO ORDERED.

                                           _____
                                           Paul G. Gardephe
                                           United States District Judge

Copy to:
Sudeepto Datta
361 Ortega Ridge Road
Santa Barbara, CA 93108